HART MILLING & POWER COMPANY *v.* A. B. McCRILLIS & SON, INC.

PRINCIPAL AND AGENT — CORPORATIONS — SALES—BREACH OF CONTRACT.

In an action for damages for failure to perform a contract for the purchase of certain flour, testimony tending to show that defendant corporation had, in different instances prior to the sale in question, paid for flour ordered by another branch corporation of a similar name and having a number of identical stockholders, operating under the laws of Massachusetts, that it had been the practice during a long period of time for the Massachusetts corporation to order goods as agent for the defendant and drafts for the purchase price were drawn by plaintiff upon defendant; that the letterheads of the Massachusetts company advertised that it was sales agent of defendant; and other evidence tending to show previous dealings between the parties and the manner of doing business considered and *held*, to present a question of fact for the jury whether the Massachusetts company was agent for defendant for the purchase of the flour.

Error to Genesee; Wisner, J. Submitted January 20, 1914. (Docket No. 134.) Decided June 7, 1915.

Assumpsit by Hart Milling & Power Company against A. B. McCrillis & Son, Inc., a foreign corporation, for the breach of a contract of sale. Judgment for plaintiff. Defendant brings error. Affirmed.

*Farley & Selby,* for appellant.

*Brennan, Cook & Gundry,* for appellee.

McALVAY, J. This suit was brought by plaintiff against defendant in assumpsit to recover damages for a breach of an alleged contract of sale of ten car loads of flour. Plaintiff recovered a verdict and judgment, and defendant brings the case to this court by writ of error for review.

Most of the facts in the case are not disputed. These parties had been in business and dealt with each other in flour for a great many years. Plaintiff is a Michigan corporation engaged in the manufacture and sale of flour and feed at Flushing, Mich. Its secretary, treasurer, and general manager is R. O. Hart. It was organized from a copartnership, and the same business had been conducted by Mr. Hart and by his father for a great many years in the same mill now occupied by plaintiff. Defendant A. B. McCrillis & Son, Incorporated, is a Rhode Island corporation incorporated in March, 1908, from a copartnership known as A. B. McCrillis & Son, doing business in Providence, R. I. It was incorporated with a capital stock of $200,000, by A. B. McCrillis, A. M. McCrillis, and Howard B. Briggs, as the incorporators; the principal incorporators being the members of the former copartnership. At the same time a branch of this copartnership then doing business in Boston, Mass., was incorporated under the laws of Massachusetts with a capital stock of $5,000, A. B. McCrillis, A. M. McCrillis, and William A. Rogers as the incorporators; the principal incorporators being

the same as the members of the Providence copartnership and as the incorporators of the Rhode Island corporation. Each of these corporations had a third incorporator holding but one share of stock merely for the purpose of making the required number of stockholders. Arthur M. McCrillis was secretary and treasurer of the Rhode Island corporation, and also treasurer of the Massachusetts corporation. His home was in Providence, R. I., and, as such officer of both of these corporations, he transacted the bulk of all their business from the Providence office, where he kept a duplicate set of books of the Massachusetts corporation. He testified that the Rhode Island corporation from time to time loaned money to the Massachusetts corporation with which to conduct its business, which loans, with interest, were charged against it in a running account.

"The Massachusetts corporation charged its goods to its customers, and, as it collected for the same, it deposited the collections to the credit of the Massachusetts corporation in Boston banks, and then drew checks in round sums which were handed over to the Rhode Island corporation and passed to the credit of the running account against A. B. McCrillis & Son Company."

Collections of both corporations were made from the Providence office through a collection department established for that purpose. Before the incorporation of either the plaintiff, defendant, or the Massachusetts corporation, when these parties were copartnerships, they had dealt together in purchases and sales of flour for from 15 to 20 years, and always through the Providence office, under the firm name of A. B. McCrillis & Son.

After these firms were incorporated the Rhode Island Company did not deal so largely in flour, but added real estate and stocks and bonds to its busi-

ness. The Massachusetts company dealt exclusively in flour and feed. After the incorporation of the Rhode Island and Massachusetts companies in March, 1908, these parties continued their business dealings, and these two Eastern corporations from time to time each placed their orders for flour with the plaintiff company as they desired. The custom was to book these orders as soon as received and await shipping orders from Boston or Providence, as the case might be. The instructions to plaintiff were always to send invoices and drafts to Providence and all payments to plaintiff for sales, whether ordered from Boston or Providence, were made upon drafts drawn upon the Rhode Island corporation and paid by it, which drafts were invariably attached to the bill of lading of the shipment. As we understand the record, no payment was ever made in any other way.

It is the claim of the plaintiff that the Boston corporation was the agent of the defendant. Following is the letter head used by the Boston concern:

"A. B. MCCRILLIS & SON CO.,
"Flour.
"Sales Agent for A. B. McCrillis & Son, Inc.,
Providence, R. I.
"329 Board of Trade Bldg., Boston, Mass."

The letter head of the Providence, R. I., corporation reads:

"A. B. MCCRILLIS & SON, INC.
"Office, 11 Exchange Place.
"Warehouse, 348 Canal Street.
"Boston Office, 329 Board of Trade Bldg.
"Providence, R. I., June 10, 1909."

Also:

"A. B. MCCRILLIS & SON, INC.
"Boston Sales Agent A. B. McCrillis & Son Co.,
329 Board of Trade Bldg.
"11 Exchange Place, Providence, R. I."

Frequently letters were written by A. B. McCrillis & Son, Incorporated, on letter heads of the Boston office, and in letters from that company the Massachusetts company was referred to as "our Boston office." In the dealings between plaintiff and defendant, whenever there were any claims against plaintiff for excess or demurrage on flour shipped under orders from the Boston office, statements for the same would be rendered to plaintiff by A. B. McCrillis & Son, Incorporated, of Providence, R. I., and checks drawn by plaintiff to either one of the companies in payment of these bills would be sent to Providence and indorsed, and the bills receipted by the defendant company.

The manner of doing business between these parties, of which we have given an outline, is not disputed, and appears from the following excerpt taken from the testimony of Mr. R. O. Hart, plaintiff's general manager:

"So far as I can recollect, we had never sold the Boston house flour for which the Providence house did not pay. In all our dealings with the Boston house we made all drafts on the Providence house. If there were any rebates or claims against us they came from Providence. We paid Providence these rebates and claims. We understood that the Providence house looked after the financial end of the Boston house. We had always done our collecting at Providence; did not know anything to the contrary. These 105 shipping instructions state that they came from the Boston house. * * * In every instance we were instructed to draw on Providence house. These shipping instructions do not include all the flour that we shipped that year. I have run over it to ascertain the date and how much flour we shipped them from orders received prior to the 8th day of March, 1910, for the year—somewhere in the neighborhood of 14,000 or 15,000 barrels. In each of these instances the draft was drawn on the Providence house, and paid by the Providence house. The Providence house never questioned the right to draw drafts on them,

and we were never criticised for it; no question was ever raised in reference to it. That had been our uniform practice during all our business career with the Boston house."

The dispute in this case arises out of an order or contract made March 8, 1910, between plaintiff and A. B. McCrillis & Son Company, of Boston, for ten car loads, being 2,050 barrels, of flour, at $5.70 per barrel. None of this order was ever delivered, because the party making such contract refused to order shipment of such flour, although often requested so to do. As stated by plaintiff:

"This suit was brought against the Providence house for breach of this contract on the theory that the credit was extended to defendant by the sale to its agent, A. B. McCrillis & Son Company, for and on its behalf."

It is the contention of defendant and appellant that the contract of March 8, 1910, having been made with the Massachusetts corporation, and not with the defendant corporation, this suit should have been instituted against the Massachusetts corporation, no agency, express or implied, having been established between the two corporations, and that the letter of February 28, 1910, was of such a character that no agency, express or implied, could be established, and that for these reasons the court should have directed a verdict in favor of defendant. This letter, upon which defendant relies, reads as follows:

"A. B. McCRILLIS & SON, INC.,
"Flour.
"Boston Sales Agent A. B. McCrillis & Son Co.,
329 Board of Trade Bldg.
"11 Exchange Place, Providence, R. I.
"Feb. 28th, 1910.
"HART MILLING AND POWER CO.,
"Flushing, Michigan.
"*Gentlemen:*
"Your favor of February 26th is at hand, and the

part of the letter which strikes me most forcibly is your request that we furnish you directions for flour which you owe the Providence office.

"Permit me to say once more, and I hope that this time I can get it sufficiently emphatic so that it will be understood, *the Providence office has no flour bought of you.*

"I cannot understand your persistence in desiring to deliver this flour to Providence, when it belongs to Boston. I don't know whether you made the mistake in booking the flour for Providence, or some one of us made a mistake and requested you to. It is absolutely immaterial. There is a mistake. The Providence office does not own that flour; never has owned it; never will own it; no matter how many times you ask us for directions on it. You have been written so many times to this effect that we are putting it as strongly as we know how. We don't want you to take offense at the strong way we put it. We have no hard feelings in the matter at all. We simply want it straightened out so that you will ship the flour on Boston office orders as should be done on cars which went forward some time ago.

"We note your suggestions that you carry everything in the name of the Boston office in the future. We cannot have this done. Our Providence office, and our Boston office, or as they should properly be called, the Rhode Island corporation and the Massachusetts corporation, are two separate and distinct firms, and we want you to carry the purchases of these two corporations separately. It is true that it so happens that the writer is treasurer of both corporations, and it is not improbable that at some time one corporation may sell to the other flour which they have purchased of you or other mills, in which event a letter signed by an officer of the corporation will be sufficient authority for you to transfer.

"Do not let what we have said above relative to the separate nature of the two corporations, confuse you on the drawing of drafts. All drafts should be drawn as formerly on A. B. McCrillis & Son, Incorporated.

"We sincerely regret that confusion has arisen over these purchases and shipments, and trust that you

will get everything straightened out in a very few days. It has been a great deal of inconvenience to us and has upset our accounts considerably.

"With kind personal regards of the writer, we remain,          Yours truly,

          "ARTHUR M. MCCRILLIS,
                    "Treas."

As has already been indicated, the court refused to direct a verdict for defendant. The court also, after judgment rendered upon the verdict of the jury, denied a motion for a new trial. Upon both of these matters exceptions were taken and errors assigned. There are other errors also assigned which relate to the admission of evidence in the case.

The principal question in this case is raised by the motion for a directed verdict on the part of defendant on the ground that the sale of the ten cars of flour was made to the Massachusetts corporation, and there was no evidence in the record tending to show any agency existing between that corporation and the defendant in this case. Before discussing that contention something is required to be said concerning the letter of February 28, 1910, above quoted, which is the main reliance of the defendant in support of this motion. This letter was written to plaintiff by defendant, and, as appears on its face, was called out by a letter from plaintiff to defendant February 26, 1910, the material parts of which are, as follows:

          "FLUSHING, MICH., Feb. 26, 1910.
"A. B. MCCRILLIS & SON,
          "Providence, R. I.
"Gentlemen:
"We have had considerable correspondence of late with reference to some flour, as we have had one lot booked up to the Providence house. We would like to ask if in ·the future it wouldn't be a good plan to carry everything in the name of the Boston office, whether bought from Providence or not, and receive shipping directions from Boston office for it. We

find you are badly tangled up on some of these sales and we hope to straighten them out for you in a day or two. We have written Boston today telling them where they were tangled up."

We also quote such part of the letter written by plaintiff to defendant in answer to its letter of February 28th as refers to the purchase of flour then under consideration, relative to the charges for which the accounts of defendant had become "tangled:"

"FLUSHING, MICH., March 2, 1910.
"A. B. MCCRILLIS & SON,
     "Providence, R. I.
"*Gentlemen:*
"Your favor of the 28th at hand. We note what you say in reference to there being two distinct offices and that the sales will be carried out along that line.

"We want to call your attention to your remark made here in the office, and this tangle is based practically on that remark. You said we must be very particular and keep the Boston and Providence offices separate and the 2,000 bbls. we booked for Providence offices and you now claim was for Boston has caused all the tangle."

Both of these letters from the plaintiff were written to the defendant in the name of A. B. McCrillis & Son, Providence, R. I. They were received, as they were intended to be, as letters dealing with the Rhode Island corporation, and answered by it as such. All of these letters speak of the Boston and Providence offices.

The record shows without dispute that for years the Boston office was a branch of the Providence office, and also shows that after the incorporation of both branches their dealings were carried on in the same manner. This appears from the letters written by defendant to plaintiff in regard to its business wherein the Boston corporation was treated as "our Boston office," and defendant's stationery was printed to that effect, and the stationery of the two concerns was

used by defendant company interchangeably when treating of the business of either office. The record also shows without dispute that plaintiff was always paid by the defendant company after the incorporation of both offices the same as before for all flour and feed sold by it to the Boston and Providence concerns, and that it had never been paid for sales made to the Boston office by the Massachusetts concern. The record further shows that these payments were made by drafts on defendant at its express order and direction. It appears that after the incorporation not only were the books of the Boston concern kept at the Providence office, but also that it was financed by the Rhode Island corporation.

It must not be lost sight of in this case that the letter of February 28, 1910, was not called out by the sale of flour out of which this litigation arises, but because of certain large purchases which had been made by these parties of plaintiff, as appears from the excerpts of letters which called out and which answered this letter of February 28th; plaintiff contending that the trouble did not arise on account of its mistakes. The large amount involved was paid to plaintiff by defendant the same as all other orders for flour had been paid since their dealings with each other commenced. The Rhode Island office was incorporated for $200,000; the Boston office for $5,000. The record shows that plaintiff and its predecessors had always extended credit to the Rhode Island corporation, and always understood that it took care of the finances of both concerns, and during the entire term of the business relations between them orders had been given for flour and feed to plaintiff from both offices, although for the last two years of their dealings the greater number of orders, which at times were for amounts of more than $10,000, came from the Boston office.

The foregoing was the situation at the time of the writing the letter of February 28, 1910, and indicates the relations of the parties to this suit to each other. As indicative of the spirit which actuated and the intent and purpose for which this letter was written, we quote the last two paragraphs:

"Do not let what I have said above relative to the separate nature of the two corporations confuse you on the drawing of drafts. All drafts should be drawn as formerly on A. B. McCrillis & Son, Incorporated.

"We sincerely regret that confusion has arisen over these purchases and shipments, and trust you will get everything straightened out in a very few days. It has been a great deal of inconvenience to us and has upset our accounts considerably."

There is no material dispute between the parties as to the facts involved in this case. It is admitted that this contract to purchase 2,050 barrels of flour at $5.70 per barrel, amounting to $11,685, was made and entered into on March 8, 1910, that the purchaser refused and neglected to carry out said contract; and it is not disputed, but that the plaintiff by reason of such default has suffered the damages claimed.

The contention of defendant is, and this is the sole question in the case, that it neither directly nor indirectly was a party to such contract, but that A. B. McCrillis & Son Company, the Massachusetts corporation, was the party which made this purchase from the plaintiff, and it is insisted that, as a matter of law, the court should have held that no agency, express or implied, had been established by plaintiff, and a verdict should have been directed in its favor.

The trial court denied the motion of defendant for an instructed verdict, and submitted the question of agency to the jury to be determined as a question of fact, holding that there was, in his opinion, evidence in the case tending to establish the existence of a disputed agency. From our examination of the record

our conclusion is that the trial court was correct; that there was such evidence in the case.

The general proposition applicable to cases of disputed agency is laid down in Cyc. as follows:

"When any evidence is adduced tending to prove the existence of a disputed agency, its existence or nonexistence is, as a general rule, a question of fact for the jury, aided by proper instructions from the court, even though the evidence be not full and satisfactory; and it is error for the court to take the question from the jury by directing a verdict, by instruction, by nonsuit, or by sustaining a demurrer to the evidence." 31 Cyc. pp. 1672-1674, and cases cited.

In his charge the learned trial judge submitted the question of both an express and implied agency to the jury at length with great care. We are satisfied that in the record there is evidence to support the finding of the jury. It is not necessary to discuss other questions.

The judgment of the circuit court is affirmed.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.